# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA
# OKLAHOMA CITY DIVISION

| | |
|---|---|
| LARRY STRONG, Individually and For Others Similarly Situated | Case No. CIV-20-154-G |
| | Jury Trial Demanded |
| v. | |
| | Collective Action |
| CALYX ENERGY, LLC and CALYX ENERGY III, LLC, | |

## ORIGINAL COMPLAINT

### SUMMARY

1.      Plaintiff Larry Strong (Strong) brings this lawsuit to recover unpaid overtime wages and other damages from Calyx Energy, LLC and Calyx Energy III, LLC (collectively, "Calyx") under the Fair Labor Standards Act (FLSA).

2.      Strong worked for Calyx as a Completions Consultant.

3.      Strong and the Day Rate Workers (as defined below) regularly worked for Calyx in excess of forty (40) hours each week.

4.      But Calyx did not pay them overtime.

5.      Instead of paying overtime as required by the FLSA, Calyx improperly classified Strong as an independent contractor and paid Strong and the Day Rate Workers a daily rate with no overtime compensation.

6.      This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION AND VENUE

7.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Calyx conducts substantial business in this district and division.

9.     Strong performed work for Calyx in this District and Division.

## THE PARTIES

10.     Strong worked for Calyx from July 2018 until May 2019.

11.     Throughout his employment, Calyx paid Strong a flat daily rate for each day worked regardless of the total hours worked in a workweek ("day rate pay plan").

12.     Calyx classified Strong as an independent contractor during this time period.

13.     Strong's consent to be a party plaintiff is attached as Exhibit 1.

14.     Strong brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Calyx's day-rate system. Calyx paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in violation of the FLSA.

15.     The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All oilfield workers who worked for, or on behalf of, Calyx Energy who were classified as independent contractors and paid a day rate with no overtime in the past three (3) years.** ("Day Rate Workers").

16.     Members of the proposed collective can be readily ascertained from Calyx's

records.

17.     Calyx Energy, LLC is a Delaware Company and may be served with process by serving its registered agent: John Podowski, 10820 E. 45th Street, Suite 208, Tulsa, OK 74146.

18.     Calyx Energy III, LLC is a Delaware Company and may be served with process by serving its registered agent: The Corporation Company, 1833 S. Morgan Road, Oklahoma City, Oklahoma 73128

## COVERAGE UNDER THE FLSA

19.     At all times hereinafter mentioned, Calyx was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20.     At all times hereinafter mentioned, Calyx was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21.     At all relevant times, Calyx has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

22.     At all relevant times, Calyx has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, computers, etc.) that have been moved in or produced for commerce.

23.     In each of the past 3 years, Calyx's annual gross volume of sales has well exceeded $1,000,000 for at least the past 3 years.

24.     At all relevant times, Strong and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

25.    Calyx uniformly applied its policy of paying its Day Rate Workers, including Strong, a day rate with no overtime compensation.

26.    At all relevant times hereinafter mentioned, Calyx treated Strong and the Day Rate Workers as employees and uniformly applied their day-rate pay practice to Strong and the Day Rate Workers.

27.    The misclassification of Strong and the Day Rate Workers as independent contractors does not alter their status as employees for purposes of this FLSA collective action.

28.    Calyx applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

29.    By paying its Day Rate Workers a day rate with no overtime compensation, Calyx violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

30.    As a result of this policy, Calyx and the Day Rate Workers do not receive overtime as required by the FLSA.

31.    Calyx's uniform compensation scheme of paying its Day Rate Workers a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## THE FACTS

32.    Calyx leases and develops oil and gas acreage throughout the Mid-Continent.

33.    To achieve its business objectives, it hires personnel (like Strong) to perform drilling operations.

34.     Many of these individuals worked for Calyx on a day rate basis (without overtime pay) and were classified as independent contractors.

35.     These workers make up the proposed collective of Day Rate Workers.

36.     While exact job titles and job duties may differ, these workers are subjected to the same or similar illegal pay practices for similar work.

37.     Calyx uniformly failed to pay overtime for the overtime hours of Strong and the Day Rate Workers.

38.     For example, during the relevant time period Strong worked for Calyx as a Completions Consultant.

39.     Throughout his employment with Calyx, Calyx classified Strong as an independent contractor and paid him on a day rate basis.

40.     Calyx directed Strong to work 12 or more hours a day for as many as 14 days in a row.

41.     Strong and the Day Rate Workers work for Calyx under its day rate pay scheme.

42.     Strong and the Day Rate Workers do not receive a salary.

43.     If Strong and the Day Rate Workers did not work, they did not get paid.

44.     Strong and the Day Rate Workers receive a day rate.

45.     Strong and the Day Rate Workers do not receive overtime pay.

46.     This is despite the fact Strong and the Day Rate Workers often worker 12 or more hours a day, for 7 days a week, for weeks at a time.

47.     For example, Strong received a day rate for each day he worked for Calyx.

48.     Although he typically worked 7 days a week, for 12 or more hours a day, he did not receive any overtime pay.

49.     Strong and the Day Rate Workers received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

50.     Strong and the Day Rate Workers are not employed on a salary basis.

51.     Strong and the Day Rate Workers do not, and never have, received guaranteed weekly compensation from Calyx irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

52.     Strong and the Day Rate Workers work in accordance with the schedule set by Calyx and/or its clients.

53.     Strong's work schedule is typical of the Day Rate Workers.

54.     Calyx controls Strong's and the Day Rate Workers' pay.

55.     Likewise, Calyx controls Strong's and the Day Rate Workers' work.

56.     Calyx requires Strong and the Day Rate Workers to follow its policies and procedures.

57.     Strong's and the Day Rate Workers' work must adhere to the quality standards put in place by Calyx.

58.     Strong and the Day Rate Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

59.     The work Strong performed was an essential part of Calyx's core business.

60.     During Strong's employment with Calyx and while he was classified as an independent contractor, Calyx exercised control over all aspects of his job.

61.     Calyx did not require any substantial investment by Strong for him to perform the work required of him.

62.     Calyx controlled Strong's opportunity for profit and loss by dictating the days and hours he worked and the rate he was paid.

63.     Strong was not required to possess any unique or specialized skillset (other than that maintained by all other workers in his respective position) to perform his job duties.

64.     While working for Calyx, Calyx controlled all the significant or meaningful aspects of the job duties performed by Strong.

65.     Calyx exercised control over the hours and locations Strong worked, tools and equipment used, and rates of pay received.

66.     No real investment was required of Strong to perform his job.

67.     More often than not, Strong utilized equipment provided by Calyx to perform his job duties.

68.     Strong did not provide the significant equipment he worked with on a daily basis.   Calyx or the operator made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Strong worked.

69.     Strong did not incur operating expenses like rent, payroll, marketing, and insurance.

70.     Strong was economically dependent on Calyx during his employment with Calyx.

71.     Calyx set Strong's rates of pay, his work schedule, and effectively prevented (or outright prohibited) him from working other jobs for other companies while he was working on jobs for Calyx.

72.     Calyx directly determined Strong's opportunity for profit and loss.

73.     Strong's earning opportunity was based on the number of days Calyx scheduled him to work.

74.     Very little skill, training, or initiative was required of Strong to perform his job duties.

75.     Indeed, the daily and weekly activities of Strong and the Day Rate Workers were routine and largely governed by standardized plans, procedures, and checklists created by Calyx.

76.     Virtually every job function was pre-determined by Calyx, including the tools and equipment to use at a job site, the data to compile, the schedule of work, and related work duties.

77.     The Day Rate Workers were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow Calyx's policies, procedures, and directives.

78.     Strong and the Day Rate Workers performed routine job duties that were largely dictated by Calyx.

79.     Strong was not employed by Calyx on a project-by-project basis.

80.     In fact, while Strong was classified as an independent contractor, he was regularly on call for Calyx and was expected to drop everything and work whenever needed.

81.     All Calyx's Day Rate Workers perform similar duties in furtherance of the oil and gas industry.

82.     Strong and the Day Rate Workers provide oil and gas procurement services for Calyx (and/or its clients').

83.     At all relevant times, Calyx maintained control over Strong and the Day Rate Workers via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

84.     Strong and the Day Rate Workers do not have the power to hire or fire any employees.

85.     Strong's working relationship with Calyx is similar Calyx's relationship with its other Day Rate Workers.

86.     Calyx knew Strong and the Day Rate Workers worked more than 40 hours in a week.

87.     Calyx knew, or showed reckless disregard for, whether the Day Rate Workers were entitled to overtime under the FLSA.

88.     Nonetheless, Calyx failed to pay Strong and the Day Rate Workers overtime.

89.     Calyx willfully violated the FLSA.

## CAUSES OF ACTION
## FLSA VIOLATIONS

90.     By failing to pay Strong and Day Rate Workers overtime at one-and-one-half times their regular rates, Calyx violated the FLSA's overtime provisions.

91.     Calyx owes Strong and Day Rate Workers the difference between the rate actually paid and the proper overtime rate.

92.     Because Calyx knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Calyx owes these wages for at least the past three years.

93.     Calyx is liable to Strong and the Day Rate Workers for an amount equal to all unpaid overtime wages as liquidated damages.

94.     Strong and Day Rate Workers are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### COLLECTIVE ACTION ALLEGATIONS

95.     Strong incorporates all previous paragraphs and alleges that the illegal pay practices Calyx imposed on Strong were likewise imposed on the Day Rate Workers.

96.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

97.     Numerous other individuals who worked with Strong indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

98.     Based on his experiences and tenure with Calyx, Strong is aware that Calyx's illegal practices were imposed on the Day Rate Workers.

99.     The Day Rate Workers were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

100.    Calyx's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Workers.

101.    Strong's experiences are therefore typical of the experiences of the Day Rate Workers.

102.    The specific job titles or precise job locations of the Day Rate Workers do not prevent collective treatment.

103.    Strong has no interests contrary to, or in conflict with, the Day Rate Workers. Like each Day Rate Worker, Strong has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

104.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

105.    Absent this action, many Day Rate Workers likely will not obtain redress of their injuries and Calyx will reap the unjust benefits of violating the FLSA.

106.    Strong knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective.

107.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

108.    Strong demands a trial by jury

## PRAYER

109.    WHEREFORE, Strong prays for judgment against Calyx as follows:

a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly

11

situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.    For an Order pursuant to Section 16(b) of the FLSA finding Calyx liable for unpaid back wages due to Strong and the Day Rate Workers for liquidated damages equal in amount to their unpaid compensation;

c.    For an Order awarding Strong and the Day Rate Workers their reasonable attorneys' fees and expenses as provided by the FLSA;

d.    For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

e.    For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
    **Michael A. Josephson**
    Texas Bar No. 24014780
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    **Richard M. Schreiber**
    Texas Bar No. 24056278
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    rschreiber@mybackwages.com

    **AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**